UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

CIVIL ACTION NO. 05-61-KKC

CHARLES R. DOSS,                                                          PLAINTIFF,

V.                  **MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,                             DEFENDANT.

## INTRODUCTION

The instant action is one for judicial review of a decision denying Plaintiff's application for a period of disability, disability insurance benefits [DIB] and Supplemental Security Income. [SSI.] The matter is currently pending before the undersigned for issuance of a report and recommendation pursuant to Title 28 U.S.C. § 636(b)(1). [Record No. 17.] The parties having filed cross-motions for summary judgment, [Record Nos. 11, 16], the matter is now ripe for review.

## FACTUAL BACKGROUND

On September 7, 1999, Charles R. Doss [Doss] filed an application for DIB and SSI benefits, alleging that he suffered from a disability due to morbid obesity, back pain, swelling in his legs and a bleeding ulcer. [Tr. 92-4, 98.] He alleged that these conditions became disabling on April, 19, 1999. The applications were denied initially and upon reconsideration. [Tr. 80-83, 86-89.] Upon request, a hearing was held before an Administrative Law Judge, who recommended that Plaintiff's claim for benefits be denied. [Tr. 39-50.] Review by the Appeals Council resulted in an order of

---

[1] Michael J. Astrue was sworn in as Commissioner of Social Security on February 12, 2007, replacing Linda S. McMahon, who served as Acting Commissioner.

April 12, 2002, remanding the matter to the ALJ for further consideration. [Tr. 57-60.] A subsequent hearing was held on December 5, 2002 at which Doss appeared, testified, and was represented by counsel. [Tr. 207-234.] In addition, testimony of a Vocational Expert [VE], Maureen Sinclair, was taken. Following the hearing, the application for benefits was denied and Doss again requested review by the Appeals Council, which denied his request was denied on July 11, 2005. [Tr. 8-10.] The instant appeal followed.

The Plaintiff, Charles R. Doss [Doss], was 29 years old at the time of his hearing in this matter below. [Tr. 193, 206.] He possesses an eighth grade education, and failed in his one attempt to obtain a G.E.D. [Tr. 194.]

In determining whether a claimant is disabled, the ALJ undertook a five-step sequential evaluation process pursuant to 20 C.F.R. §§ 404.1520, 416.920. This process was summarized by the Sixth Circuit Court of Appeals in Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 474 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

336 F.3d at 474 (internal citations omitted).

At the first step of the sequential evaluation process in the instant case, The ALJ found that Doss has not engaged in substantial gainful activity. At the second step, the ALJ found that the medically determinable impairments were severe within the meaning of the Regulations, see 20 C.F.R. §§ 404.1520©), 404.1521, 416.920©), 416.921. Those impairment included obesity and

2

arthritis. [Tr. 20.] At step three the ALJ found Plaintiff's medically determinable impairments did not meet or medically equal an impairment in the Listings. see generally 20 C.F.R. pt. 404, subpt. P, app. 1. [Tr. 20.] At the fourth step, the ALJ found that Plaintiff was unable to perform his past relevant work, see 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). [Tr. 23.] At the fifth and final step, relying on the testimony of the VE and taking into consideration Plaintiff's age, educational background, past relevant work experience, and residual functional capacity (hereinafter "RFC"), the ALJ found that Plaintiff was capable of making a successful adjustment to work existing in significant numbers in the national economy and on this basis denied his claim for DIB. [Tr. 24.]

The Plaintiff now moves for summary judgment arguing that the matter should be remanded to determine whether Plaintiff met the "obesity listing" at the time he applied for benefits, pursuant to the Sixth Circuit's decision in the matter of Combs v. Commissioner of Social Security, 400 F.3d 353 (6th Cir. 2005). Second, the Plaintiff argues that the ALJ erred by failing to give greater weight to the physical assessment of Plaintiff's treating physician. Finally, the Plaintiff argues that his morbid obesity renders him unable to perform work at any exertional level.

The Defendant also moved for summary judgment arguing that the ALJ's decision finding that Doss was not disabled is supported by substantial evidence on various grounds. In addition, the Defendant asserts that the ALJ was not required to consider the deleted obesity listing in deciding Plaintiff's claim.

## STANDARD OF REVIEW

The essential issue on appeal to this Court is whether the ALJ's decision finding Plaintiff not disabled is supported by substantial evidence. 42 U.S.C. § 405(g); Abbott v. Sullivan, 905 F.2d 918, 922 (6th Cir. 1990); see also Jones v. Sec'y of Health & Human Servs., 945 F.2d 1365, 1368-1369

3

(6th Cir. 1991).  Substantial evidence is "such evidence as a reasonable mind shall accept as adequate to support a conclusion."  It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984).

Furthermore, the Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.  "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."  Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir.1993); see also Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389-90 (6th Cir. 1999).

The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts.  Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986).  If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.  Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983); Studaway v. Sec'y of Health & Human Servs., 815 F.2d 1074, 1076 (6th Cir. 1987).  Finally, "[t]he court may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility."  Bradley v. Sec'y of Health & Human Servs., 862 F.2d 1224, 1228 (6th Cir. 1988) (citing Gaffney v. Bowen, 825 F.2d 98, 100 (6th Cir.1987)).

ANALYSIS

I.  Plaintiff first argues that the instant matter should be remanded to determine whether Plaintiff met the "obesity listing" at the time he applied for benefits, pursuant to the Sixth Circuit's decision in the matter of Combs v. Commissioner of Social Security, 400 F.3d 353 (6th Cir. 2005).

4

Effective October 25, 1999, the SSA deleted the listing of obesity as a disability. See 20 C.F.R. part 404, Subpart P, Appx. 1, § 9.09 (1996). Subsequently, the SSA issued two rulings indicating its intent to apply the new regulations deleting obesity as a listed disability to all pending cases. Combs, at 357. In Combs, the court held that the new regulation deleting obesity as a listed disability should not be applied to claims pending when the revision occurred, so long as they were filed prior to the amendment. Subsequently, in Combs v. Commissioner of Social Security, 459 F.3d 640 (6th Cir. 2006), the Sixth Circuit, sitting *en banc*, held that applying the new regulation which did not contain obesity to all claims pending when the revision occurred was not impermissibly retroactive. Combs, 459 F.3d at 642. In the instant case, application of the revised listing of impairments which deleted obesity as a listed impairment did not constitute error, as the new listing had its effect on Doss' claim when that claim was administratively adjudicated. Therefore, Doss' first argument is without merit.

II. Plaintiff's second argument is that the ALJ erred by not giving greater weight to the physical assessment of Plaintiff's treating physician. Specifically, Doss argues that Dr. Kenneth E. Hines provided a physical assessment of Doss' ability to do work-related activities in which the Plaintiff was limited to standing, or standing and walking, less than one hour at a time, with the ability to alternate between sitting and standing for an hour and then lie down. He further restricted Doss from using his left hand for simple grasping, and restricted Doss from using his arms to push and pull arm controls, or use his legs to operate leg controls. [Tr. 188-189.] Doss argues that the ALJ should have given greater consideration to these opinions as they ultimately bear on the issue of disability.

The ALJ commits reversible error if he or she has improperly failed to accord greater weight

5

to a treating physician's opinion than to the opinion of a doctor to whom the Plaintiff was sent for the purpose of gathering information against his disability claim, an examining or consultative physician. Bowie v. Harris, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Further, opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922, 927 (6th Cir. 1987); Walters v. Commissioner of Social Security, 127 F.3d 525, 530 (6th Cir. 1997) (A treating physician's opinion is entitled to controlling weight when the medical opinion is not inconsistent with the other substantial evidence in the record. See id.

The weight to be given to the opinions of a treating physician compared with that of an examining or consultative physician depends on several factors. "Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d)(1). Further, all of the general rules about the weight to be given to a particular class of physicians' medical opinions presumes that the physician's opinion is based on objective medical findings, or what the regulations call "supportability". See 20 C.F.R. § 404.1527(d)(3); Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Other factors which are to be considered in deciding how much weight to afford a medical opinion are consistency, specialization, and the length, nature, and extent of the treating relationship, if one exists. See 20 C.F.R. § 404.1527(d). Ultimately, however, "the determination of disability is the prerogative of the [Commissioner], not the physician," and the Commissioner is not bound by the physician's medical opinions. Houston,

736 F.2d at 367.

In the instant matter, Dr Hines' Medical Assessment of Ability to do Work-Related Activities (Physical) states: "seen only twice in three years - have no x-rays or records." [Tr. 189.] Dr. Hines' treatment records subsequent to the Medical Assessment referenced previously, note minimal objective findings of any kind. [Tr. 75-77.] Although Dr. Hines opines that Doss is "[t]otally disabled for any useful employment," [Tr. 77], his records fail to report any abnormal physical examination findings beyond morbid obesity, and blood pressure readings. On the contrary, the report of Dr. Rita Ratliff is based upon objective findings following physical examination. Dr. Ratliff reported that Doss had no motor or neurologic deficit on examination but did exhibit a decreased range of motion. [Tr. 162-165.] His exam was also consistent with reflux and possible peptic ulcer disease, but she noted that his symptoms were controlled. [Tr. 164.] Although Dr. Ratliff did not assess restrictions for stooping, bending reaching, sitting, standing, moving about, lifting, carrying or handling objects, she felt that, due to his morbid obesity, he would be unable to perform any strenuous or prolonged activity. [Tr. 164-165.] She further opined that he did not require an assistive device for ambulation. [Tr. 165.]

As the opinions of Dr. Hines are not based upon objective medical findings in the record, and are not otherwise uncontradicted by the body of medical evidence, the ALJ is not required to give greater weight to his opinions. Therefore, the ALJ did not err by giving greater weight to the opinion of an evaluating or consultative physician in this matter.

III. Finally, Doss contends that the record establishes that his morbid obesity renders him unable to perform work at any exertional level. However, in the instant matter the ALJ found that Doss was capable of making a successful adjustment to work existing in significant numbers in the

7

national economy and on this basis denied his claim for DIB. [Tr. 25.] In support of this finding, the ALJ relied upon the consultative medical examination of Dr. Rita Ratliff as noted above, who reported that Doss had no motor or neurologic deficit on examination but did exhibit a decreased range of motion. [Tr. 162-165.] His exam was also consistent with reflux and possible peptic ulcer disease, but she noted that his symptoms were controlled. [Tr. 164.] Dr. Ratliff did not assess restrictions for stooping, bending reaching, sitting, standing, moving about, lifting, carrying or handling objects, and felt that, due to his morbid obesity, he would be unable to perform any strenuous or prolonged activity. [Tr. 164-165.] He did not require an assistive device for ambulation. [Tr. 165.]

During the hearing the ALJ called upon a VE, Maureen Sinclair, to identify whether jobs exist in the workforce for which Doss would be qualified considering his age, education, vocational background, and residual functional capacity. [Tr. 207-234.] The ALJ posed the following question to the VE:

> Q. All right. Well, considering the age, education and work experience of Mr. Doss and that he hypothetically has a residual functional capacity for sedentary work only and restricted as follows. One, he can only lift 10 pounds at one time maximum and he can only left less then [sic] five pounds frequently. Secondly, he must be able to freely alternate positions while performing work responsibilities between remaining seated and standing. And, finally, he cannot do any bending or squatting or crawling or climbing or be exposed to unprotected heights or moving machinery or humidity or temperature extremes or changes in the temperature while performing job responsibilities. Do any jobs exist in the nation that a person with Mr. Doss's [sic] age, education ans work experience could perform and that comply fully with the restrictions contained in the hypothetical?

[Tr. 217.]

What ensued was a discussion regarding Doss' past relevant work, and whether he could continue to his prior work. Finally, however, the VE testified that:

8

>. . . I do think, however, that bench assembly – this is – it was dictated by the job. However, what we find in bench assembly work as opposed to just assembly line work is that the persons do have the ability to sit or stand as they either need to or as for comfort in order to complete the task at hand. So basically from my point of view, a vocational point of view, we find bench assemblers do have an ability to sit or stand freely, whatever's comfortable with them. The (inaudible) in bench assembly work is that the task gets done, managers don't dictate how the task gets done. So therefore, I feel bench assembly work would meet the hypothetical as opposed to assembly work. At the current time in the sedentary level of activity there are 880,000 persons working in bench assembly in the United States. I'm talking about entry level bench assembler because some are very complex jobs. But the entry level bench assembler at the current time there are 8,500 persons doing those jobs in the state of – in the Commonwealth of Kentucky and within a 59-mile radius, of Mercer County which I used as the compass point for this, for our local area I find up to 800 persons doing that kind of job.
>
>Q.  Do all 880,000 assembly jobs comply with all restrictions contained in the hypothetical in your opinion?
>A.  Yes, sir. My opinion is based on my experience, they do.
>Q.  Describe the distribution of these 880,000 jobs throughout the nation.
>A.  You find no one area of the country that you don't find factory work, bench assemblers being employed. They are –the majority of jobs, however, are concentrated in the more populated areas of a state or Commonwealth.
>Q.  Okay. Have all the opinions you've expressed today been consistent with the characterizations and classifications contained in the Dictionary of Occupational Titles and its companion publication?
>A.  Yes, sir, they are.

[Tr. 221-222.]

* * *

>Q.  I'm not trying to be [a] smart aleck. But did you answer the question – I mean are you able to draw an inference and not in the area of speculation as to whether or not Mr. Doss can do these 880,000 jobs or can he not?
>A.  I don't know, Judge. I think he can get the job and I think he can attempt to do it. I think he can be successful, but I don't have a crystal ball either, so I don't know. But he certainly could get the job and the job certainly would be suited to this hypothetical to what appears to be his physical needs.
>Q.  Okay. So the jobs comply with all restrictions contained in the hypothetical, and even if Mr. Doss weights 470 or 480?
>A.  Yes. In my opinion it does.

[Tr.229.]

Clearly, contrary to Doss' argument, the ALJ based his opinion upon evidence of record

supporting the conclusion that although morbidly obese, Doss is capable of performing in jobs that exist in significant numbers in the national economy. Therefore, substantial evidence exists in the record to support the ALJ's decision finding Plaintiff not disabled thus not entitled to SSI benefits. See O'Banner v. Sec'y of Health, Educ., & Welfare, 587 F.2d 321, 323 (6th Cir. 1978); Valey v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987). The fact that some of the evidence in the record may support a contrary conclusion is insufficient grounds for reversal. See Casey, 987 F.2d at 1233; Her, 203 F.3d at 389-90.

For the reasons stated herein, it will be the undersigned's recommendation that the Plaintiff's motion for summary judgment be denied, and the Defendant's motion be granted.

## CONCLUSION

Therefore, for the reasons set forth above, it is recommended that: Defendant Commissioner's motion for summary judgment [Record No. 16] be granted; Plaintiff's motion for summary judgment [Record No. 11] be denied; Judgment be entered affirming the Commissioner's final decision and dismissing this action with prejudice; and, that this action be stricken from the Court's docket.

Specific objections to this Report and Recommendation must be filed within ten days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749-750 (E.D. Ky. 2002). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within ten days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed.

R. Civ. P. 72(b).

    Signed March 9, 2007.

